UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DOUGLAS CORNELL JACKSON,

        Plaintiff,

v.

UNKNOWN KOKKO et al.,

        Defendants.

_____/

Case No. 2:18-cv-15

Honorable Paul L. Maloney

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kokko, Hill, and Borgen. The Court will serve the complaint against Defendants Perala, Basgen [Bastian], Cordanaro, Skytta, Rule, Bouchard, Holley, and Paacolon.

**Discussion**

I.   **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues Defendants Sergeant Unknown Kokko, Health Unit Manager Gloria Hill, Sergeant Unknown Borgen, Corrections Officer Unknown Perala, Prison Counselor Unknown Basgen [Bastian], Corrections Officer Unknown Cordanaro, Corrections Officer Unknown Skytta, Corrections Officer Unknown Rule, Law Librarian Joseph Bouchard, Corrections Officer Bobby Holley, and Corrections Officer Unknown Paacolon.

Plaintiff alleges that on February 16, 2017, he filed a sexual assault grievance against Corrections Officer James Lachance, who is not named as a Defendant in this case. Plaintiff complains that on June 14, 2017, he wrote a grievance on Defendant Rule for taking various legal papers from him. On June 16, 2017, Defendant Rule sent Plaintiff's legal property to AMF cell #1-127. Plaintiff's legal property was a mess, which interfered with his pending and contemplated litigation. When Plaintiff complained to Defendant Rule, he wrote a retaliatory class II misconduct ticket on Plaintiff.

On November 20, 2017, Defendant Bouchard told Plaintiff to stop filing civil actions against him, or he would deny Plaintiff legal writer services. At the time that Defendant Bouchard made the remarks, Plaintiff was meeting with a legal writer to work on a petition for a writ of certiorari in *Jackson v. Bouchard*, No. 17-1084 (6th Cir.), and had recently filed grievances on Defendant Bouchard for refusing Plaintiff's copy requests. Plaintiff claims that he requires legal writer services because he only has an eighth grade education and is untrained in the law.

On November 27, 2017, Plaintiff again complained about the sexual assault by Lachance. On December 19, 2017, Inspector Cummings sarcastically told Plaintiff that Internal Affairs was investigating Lachance. Later that day, Defendant Kokko came to take Plaintiff to segregation. Plaintiff was afraid and urinated on himself. Plaintiff told Defendant Kokko that he wanted to speak to a captain first. Thereafter, Defendant Perala came to Plaintiff's cell and stated, "Since you like writing grievances and filing law suits against my buddies, we've got something special planned for you. I'm gonna work second shift just to pack your shit Mr. Lawyer." Defendant Perala subsequently wrote a misconduct on Plaintiff, asserting that while packing up Plaintiff's property, he discovered a loose razor blade taped to the rear side leg of the footlocker. Defendant Perala noted that Plaintiff had had complete control of the cell prior to the pack-up of his property. Defendant Perala later refused to let Plaintiff out of his cell for his scheduled meeting with a legal writer. Defendant Kokko wrote Plaintiff a misconduct for refusing to go to segregation.

Later in the day on December 19, 2017, Plaintiff was taken to segregation without any reason being given. Plaintiff contacted Defendant Bouchard and requested the assistance of a legal writer on December 19 and 20. Plaintiff also requested reference books and a copy of the bar journal so that he could find addresses for pro bono attorneys and to state and federal courts. Plaintiff's requests were denied. Plaintiff states that the actions of Defendant Bouchard prevented him from researching issues such as jurisdiction, venue, standing, exhaustion of remedies, proper defendants, and available relief. Plaintiff also asserts that Defendant Bouchard prevented him from filing a timely petition for writ of certiorari in Sixth Circuit case No. 17-1084, and from filing a timely appeal in *Jackson v. Feliciano*, No. 2:17-cv-77 (W.D. Mich.).[1] Plaintiff received

---

[1] The Court notes that *Jackson v. Feliciano*, No. 2:17-cv-77 (W.D. Mich.) has not been dismissed in its entirety. Pursuant to 28 U.S.C. § 1291, the courts of appeals shall have jurisdiction of appeals from all final decisions of the

misconduct tickets for disobeying a direct order and possession of contraband, as well as a notice of intent to classify Plaintiff to administrative segregation.

On December 20, 2017, Hearing Investigator Raymond helped Plaintiff to obtain requested documents and witnesses, but told Plaintiff that he would not provide him with the policy directive on communicable diseases. Plaintiff believes that the policy shows that Defendant Hill did not have the authority to quarantine Plaintiff. Hearing Investigator Raymond told Plaintiff that he belonged in segregation for refusing TB testing and that there was no defense to the dangerous contraband misconduct written by Defendant Perala. Plaintiff claims that without Raymond's assistance, he could not obtain the necessary documents. Plaintiff alleges that at some point Defendant Hill wrote a Notice of Intent (NOI) to classify Plaintiff to administrative segregation for refusing "TB testing." Plaintiff asserts that he never spoke to Defendants Hill or Borgen about TB testing and that he has no symptoms of TB. Plaintiff contends that Defendants Hill and Borgen were not authorized to send Plaintiff to quarantine. Plaintiff also states that the real reason he is in segregation is for punishment, not for health reasons.

Also on December 20, 2017, Defendant Paacolon refused to give Plaintiff paper despite the fact that he was aware of Plaintiff's pending cases and filing deadlines. Defendant Paacolon also refused to give Plaintiff his store order, even though Plaintiff had already paid for it. Plaintiff wrote his pleadings on a grievance form, but when he asked Defendant Basgen for an envelope, Defendant Basgen said, "You can forget about any filings in a court after Rule is done with your shit. You will learn not to complain about Baraga Prison staff. The courts don't care."

---

district courts. Because there has been no such final decision in No. 2:17-cv-77, an appeal in that case would not be taken in good faith. Therefore, Plaintiff cannot show that he was denied access to the courts on that basis.

4

Plaintiff then asked Defendant Basgen for his store order and Defendant Basgen replied, "You're being taught a lesson not to file lawsuits and grievances, you're not getting store homeboy."

On December 22, 2017, Defendant Paacolon and Corrections Officer Lee gave Plaintiff five duffel bags full of his legal property. Plaintiff states that Defendant Rule had removed all the legal documents and caselaw from the folders and envelopes, so that all the papers were mixed up in the duffel bags. Plaintiff claims that all of his papers had previously been deemed allowable excess legal property. Plaintiff asserts that documents from numerous cases in the state and federal courts were destroyed, confiscated, or lost. Plaintiff has been unable to reassemble his papers, which relate to pending civil and criminal litigation, and insists that Defendant Rule's conduct has prevented him from proving his innocence.

Plaintiff claims that while in segregation at AMF, Defendant Cordanaro refused to give him writing paper and told Plaintiff to drop his civil suits or he would be killed. When Plaintiff reported the threat, Defendant Basgen told Plaintiff that he did not believe convicts. When Plaintiff asked Defendant Basgen for writing paper, he replied that if Plaintiff "took the TB test [he] would not need writing paper or been charged with having a razor." Defendant Basgen then advised Plaintiff to drop the civil suit. Defendant Skytta came to Plaintiff's cell and said "Don't ask me for shit or you won't eat." Plaintiff was never given any writing paper despite the fact that Plaintiff told Defendants Cordanaro, Skytta, and Basgen about the deadlines for his pending cases. Defendant Skytta later warned Plaintiff by stating, "If you file any grievances, you're going to die old nigger."

Plaintiff alleges that he asked Defendant Bouchard to reschedule the December 19, 2017, legal writer meeting because of the impending deadline for filing a petition for writ of certiorari in the United States Supreme Court. Plaintiff states that the legal writer came to his unit

5

on December 23, 25, 26, and 30 of 2017, but only met with Plaintiff on December 30, 2017. At that point, the deadline for filing the petition for writ of certiorari had expired.

On December 27, 2017, Defendants Skytta, Cordanaro, and Basgen denied Plaintiff's request for soap. On December 28, 2017, Defendants Skytta, Cordanaro, and Basgen denied Plaintiff's requests for soap and toothpaste, stating that the items were not allowed in segregation. Later that day, Defendant Holley told Plaintiff that because he had accused Corrections Officer Lachance of sexual assault, Defendant Holley was going to "fuck him up." Defendant Holley later lied and said that Plaintiff refused to attend his hearing. Plaintiff was found guilty and given 10 days loss of privileges. On December 28, 2017, Plaintiff had three hearings on the misconduct tickets and the notice of intent he received on December 19, 2017. Plaintiff was not present at the hearing on the disobeying a direct order misconduct because Defendant Holley lied and said that Plaintiff was refusing to attend. Plaintiff was not allowed to offer evidence at his hearings on the notice of intent and the dangerous contraband ticket. Plaintiff was found guilty at all three hearings.

On December 29, 2017, Plaintiff ordered indigent legal supplies. Defendants Skytta and Cordanaro again refused to give Plaintiff soap and toothpaste and warned him that if he complained they would assault him. Plaintiff asked to send out legal mail to a state court, but Defendants Skytta and Cordanaro refused and Defendant Skytta stated, "not gon happen nigger." Later that day, Defendants Skytta and Cordanaro refused to give Plaintiff toilet paper.

On January 2, 2018, Defendant Holley told Plaintiff, "See how easy it is for us to fuck you over, I told Lt. Linder that you refused to attend your DDO [disobeying a direct order] hearing and your dumb ass was found guilty. You filed lawsuits and your property got fucked up. Enjoy, you're staying in the hole motherfucker." On January 4, 2017, Plaintiff gave Defendant

6

Basgen his Court of Appeals opinion in Case No. 17-1084, for submission to Defendant Bouchard. Plaintiff never got any response from either Basgen or Bouchard. Defendant Basgen attempted to force Plaintiff to take the wrong sized envelopes. Later, a mental health worker named Beaudoin came to Plaintiff's cell and Plaintiff gave him a kite stating that he was afraid for his life. The kite asserted that Plaintiff had been sexually assaulted by Defendant Holley on February 16, 2016, and sexually harassed on November 27, 2017, and December 29, 2017. Plaintiff asked Beaudoin to return the note to him with a health care stamp on it, so that Plaintiff could use it as evidence. Beaudoin agreed.

On January 5, 2017, Defendant Skytta denied his request for toothpaste, saying that all Plaintiff has done is file grievances. Later that day, Defendant Holley took Plaintiff to see Resident Unit Manager Jondreau for his PREA [Prison Rape Elimination Act] interview related to the December 29, 2017, sexual harassment by Defendant Holley. On the way, Defendant Holley warned Plaintiff to watch what he said to Resident Unit Manager Jondreau. After Plaintiff arrived at Jondreau's office, Jondreau had Defendant Holley leave and Defendant Skytta replace him. Plaintiff asked for Defendant Skytta to leave also, but Jondreau replied that Plaintiff did not run anything. Remembering the threats made by Defendants Cordanaro and Skytta, Plaintiff told Jondreau that he had nothing to say, but that he would send him a written statement. On the way back to his cell, Defendant Skytta told Plaintiff that he was not going to eat for a long time, then both he and Jondreau laughed.

Later that day, Defendant Skytta refused to give Plaintiff his lunch tray and on January 6, 2018, Defendant Skytta refused to give Plaintiff his breakfast tray. Defendant Holley subsequently told Plaintiff that he did not write misconduct tickets, but instead took food trays, shower, and yard. On January 8 and 9, 2018, Plaintiff asked Defendant Basgen for toothpaste and

7

submitted a kite regarding the need for toothpaste, but as of January 12, 2018, he had not received toothpaste. Plaintiff was told that he could brush his teeth using water.

Plaintiff claims that his legal writer has refused to assist him in any case where Defendant Bouchard is a defendant because Defendant Bouchard runs the legal writer program. Plaintiff states that this prevents him from having meaningful access to the courts. Plaintiff states that he filed numerous grievances against the named Defendants and other prison officials in 2015, 2016, and 2017, asserting interference with Plaintiff's access to the courts, as well as other forms of misconduct. On January 19, 2018, Defendants Basgen and Skytta refused to give Plaintiff a toothbrush, although Defendant Skytta gave another similarly situated inmate a toothbrush on the same day. Defendant Skytta told Plaintiff that he was not going to give him his lunch, but Plaintiff received his lunch tray from Defendant Holley. Defendant Basgen later denied Plaintiff's request for carbon paper, business sized envelopes, and oversized legal envelopes that Plaintiff needed to submit documents to the courts.

On January 20, 2018, Defendant Skytta refused to give Plaintiff his breakfast tray. On January 22, 2018, Defendant Basgen again refused to give Plaintiff supplies for his legal mail. Plaintiff complains that he has no access to the Federal Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure. On January 24, 2018, Plaintiff was moved to a detention cell without any reason being given. The cell was filthy and smelled of urine. On January 25, 2018, Defendant Basgen asked Plaintiff, "How do you like your new home, let's see how much shit you can file now." Plaintiff ignored him. Defendant Basgen then slammed a stack of papers onto Plaintiff's hand. When Plaintiff verbalized pain, Defendant Basgen called him a retard and made faces at him.

On January 26, 2018, Plaintiff was told that he could not receive his store items because he was housed in segregation. However, the items ordered by Plaintiff were allowable for segregation prisoners. Plaintiff states that other similarly situated inmates received their store items the previous month and that Defendant Basgen told him that he was being taught a lesson "not to file lawsuits and grievances." Plaintiff alleges that Defendant Basgen prevented Plaintiff from getting his complaint and affidavit notarized in this case, and delayed Plaintiff's access to his exhibits.

Plaintiff states that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks damages and an order transferring him to another facility.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff alleges that Defendant Kokko wrote a misconduct on Plaintiff for refusing to go to segregation. A misconduct for disobeying a direct order is a class II misconduct. *See* MDOC Policy Directive 03.03.105B (eff. date 04/09/12). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, Plaintiff was not subject to a denial of good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*,

69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct convictions.

Additionally, Plaintiff fails to state a retaliation claim against Defendant Kokko. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff concedes that he initially refused to go to segregation. A prisoner's act of refusing to obey a direct order to go to segregation is not protected conduct because such behavior is a violation of the MDOC Policy Directive governing prisoner misconduct. *See* Policy Directive 03.03.105, ¶ B. In addition, Plaintiff fails to allege any facts showing that Defendant Kokko was motivated by a desire to retaliate against Plaintiff when he wrote the misconduct ticket. Therefore, because Plaintiff fails to allege facts showing that his conduct was protected or that Defendant Kokko had a retaliatory motive, his retaliation claim against Defendant Kokko is properly dismissed.

Plaintiff claims that Defendants Hill and Borgen wrote a NOI to classify Plaintiff to quarantine for refusing a TB test without the proper authority and despite the fact that Plaintiff did not personally speak to them about the test or have symptoms of TB. However, Plaintiff does not deny refusing to submit to a TB test. According to MDOC Policy Directive 03.04.115 ¶¶ K-L, health care staff shall screen all offenders for TB, and an offender who refuses to submit to required screening, testing or treatment shall be quarantined. Screening for TB shall include a skin test unless there is satisfactory written medical documentation of a negative skin test within the preceding 90 calendar days, a past positive skin test, a report by the offender of a previous positive skin test, or written medical documentation of a past significant positive reaction.

Because Plaintiff did not have a right to refuse to submit to a TB test, and because he fails to allege facts showing that his placement in quarantine was retaliatory, he does not state a valid retaliation claim against either Defendant Hill or Defendant Borgen. Moreover, Plaintiff's due process claim regarding his quarantine in segregation fails at the first step. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Plaintiff has failed to allege the sort of atypical and significant hardship that would warrant due process protection before his quarantine in segregation. Therefore, any due process claims Plaintiff is asserting against Defendants Hill and Borgen are properly dismissed.

The Court notes that Plaintiff's claims against Defendants Perala, Basgen [Bastian], Cordanaro, Skytta, Rule, Bouchard, Holley, and Paacolon are not clearly frivolous and may not be dismissed on initial review.

II. Plaintiff's pending motions

Plaintiff has filed a motion for a temporary restraining order (ECF No. 6) against the Michigan Department of Corrections (MDOC), Director Heidi E. Washington, and AMF Deputies Daniel Lesatz and Lincoln Marshall. In his motion, Plaintiff lists a litany of conclusory allegations of mistreatment by staff at AMF and asks to be transferred to another facility. According to the docket sheet in this case, Plaintiff is no longer being housed at AMF, and is now confined at the Oaks Correctional Facility. Therefore, the relief he is seeking is no longer necessary. Moreover, the Court notes that Plaintiff is seeking injunctive relief against individuals who are not Defendants in this case. The Court does not have jurisdiction over individuals that are not parties to this action. *Zenith Radio Corp., v. Hazeltine Research Inc.*, 395 U.S. 100 (1969). Accordingly, Plaintiff's motion for a temporary restraining order is properly denied.

Plaintiff also seeks to consolidate this case with case numbers 2:18-cv-16 and 2:18-cv-19 (ECF No. 8). The Court notes that *Jackson v. Bastian*, 2:18-cv-16 (W.D. Mich.) asserts a single claims against Defendant Bastian for conduct that occurred after Plaintiff had already filed the instant complaint in this case. An order regarding service has already been issued in case number 2:18-cv-16. In *Jackson v. Coronado, et al.*, 2:18-cv-19 (W.D. Mich.), Plaintiff claims that the named Defendants in that case retaliated against him for his conduct in filing the instant

14

complaint in this case. Plaintiff attaches a copy of the order granting pauper status in 2:18-cv-16 to his motion to consolidate. It appears that Plaintiff is attempting to circumvent the requirement that he pay a filing fee in all three cases by consolidating them. It was Plaintiff's choice to institute all three of the actions filed by him. To consolidate these cases in order to avoid payment of the filing fee in each case would improperly circumvent the express language and clear intent of the Prison Litigation Reform Act of 1996, 28 U.S.C. § 1915(g). Plaintiff's motion to consolidate (ECF No. 8) will therefore be denied.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kokko, Hill, and Borgen will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Perala, Basgen [Bastian], Cordanaro, Skytta, Rule, Bouchard, Holley, and Paacolon.

In addition, Plaintiff's motions for a temporary restraining order (ECF No. 6) and to consolidate (ECF No. 8) will be denied.

An Order consistent with this Opinion will be entered.


Dated:  June 19, 2018                             /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge