UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOUGLAS CORNELL JACKSON #748757,                    Case No. 2:18-cv-00015

        Plaintiff,                                       Hon. Paul L. Maloney
                                                    U.S. District Judge

v.

UNKNOWN KOKKO, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I. Introduction

State prisoner Douglas Cornell Jackson filed this civil rights action pursuant to 42 U.S.C. § 1983 on February 5, 2018. Jackson alleges that the Defendants violated his First, Eighth, and Fourteenth Amendment rights.

The remaining Defendants are: Corrections Officer (CO) Perala, Prison Counselor Basgen (correctly spelled Bastian), CO Cordanaro, CO Skytta, CO Rule, Law Librarian Bouchard, CO Holley, and CO Paacolon.

This report and recommendation addresses two motions. First, on June 26, 2019, Defendants moved for partial summary judgment to dismiss Jackson's Eighth Amendment claim and his First and Fourteenth Amendment access-to-the-courts claims. (ECF No. 65, PageID.991.[1]) Defendants argue that Jackson's Eighth Amendment claims involve only temporary inconveniences and do not rise to the level

_____

[1] This case involves allegations that Defendants limited Jackson's access to the courts in other cases. All record citations in this report and recommendation are to W.D. Mich. Case No. 2:18-cv-15 unless otherwise stated.

of cruel and unusual punishment.   Defendants argue that Jackson has failed to show actual injury in a lawsuit involving a direct appeal, a petition for writ of habeas corpus, or a civil rights case, which is necessary showing to support an access-to-the-courts claim.   Defendants do not request dismissal of Jackson's First Amendment retaliation claims.

Second, on October 25, 2019, Jackson filed a motion for injunctive relief requesting that the Court order Defendants and other corrections staff to stop interfering with his litigation, return confiscated property, and transfer him to a new prison.   (ECF No. 74, PageID.1063.)

The undersigned respectfully recommends that the Court grant Defendants' partial motion for summary judgment and dismiss Jackson's First and Fourteenth Amendment access-to-the-court claims and his Eighth Amendment claims.   In addition, it is recommended that the Court deny Jackson's request for immediate injunctive relief.

## II.   Factual Allegations

Jackson's rather complicated factual allegations were summarized in the Court's June 19, 2018, opinion.   (ECF No. 12, PageID.623.)

> Plaintiff alleges that on February 16, 2017, he filed a sexual assault grievance against Corrections Officer James Lachance, who is not named as a Defendant in this case. Plaintiff complains that on June 14, 2017, he wrote a grievance on Defendant Rule for taking various legal papers from him. On June 16, 2017, Defendant Rule sent Plaintiff's legal property to AMF cell #1-127.   Plaintiff's legal property was a mess, which interfered with his pending and contemplated litigation. When Plaintiff complained to Defendant Rule, he wrote a retaliatory class II misconduct ticket on Plaintiff.

On November 20, 2017, Defendant Bouchard told Plaintiff to stop filing civil actions against him, or he would deny Plaintiff legal writer services. At the time that Defendant Bouchard made the remarks, Plaintiff was meeting with a legal writer to work on a petition for a writ of certiorari in *Jackson v. Bouchard*, No. 17-1084 (6th Cir.), and had recently filed grievances on Defendant Bouchard for refusing Plaintiff's copy requests. Plaintiff claims that he requires legal writer services because he only has an eighth grade education and is untrained in the law.

On November 27, 2017, Plaintiff again complained about the sexual assault by Lachance. On December 19, 2017, Inspector Cummings sarcastically told Plaintiff that Internal Affairs was investigating Lachance. Later that day, Defendant Kokko came to take Plaintiff to segregation. Plaintiff was afraid and urinated on himself. Plaintiff told Defendant Kokko that he wanted to speak to a captain first. Thereafter, Defendant Perala came to Plaintiff's cell and stated, "Since you like writing grievances and filing law suits against my buddies, we've got something special planned for you. I'm gonna work second shift just to pack your shit Mr. Lawyer." Defendant Perala subsequently wrote a misconduct on Plaintiff, asserting that while packing up Plaintiff's property, he discovered a loose razor blade taped to the rear side leg of the footlocker. Defendant Perala noted that Plaintiff had had complete control of the cell prior to the pack-up of his property. Defendant Perala later refused to let Plaintiff out of his cell for his scheduled meeting with a legal writer. Defendant Kokko wrote Plaintiff a misconduct for refusing to go to segregation.

Later in the day on December 19, 2017, Plaintiff was taken to segregation without any reason being given. Plaintiff contacted Defendant Bouchard and requested the assistance of a legal writer on December 19 and 20. Plaintiff also requested reference books and a copy of the bar journal so that he could find addresses for pro bono attorneys and to state and federal courts. Plaintiff's requests were denied. Plaintiff states that the actions of Defendant Bouchard prevented him from researching issues such as jurisdiction, venue, standing, exhaustion of remedies, proper defendants, and available relief. Plaintiff also asserts that Defendant Bouchard prevented him from filing a timely petition for writ of certiorari in Sixth Circuit case No. 17-1084, and from filing a timely appeal in *Jackson v. Feliciano*, No. 2:17-cv-77 (W.D. Mich.). Plaintiff received misconduct tickets for disobeying a direct order and possession of contraband, as well as a notice of intent to classify Plaintiff to administrative segregation.

On December 20, 2017, Hearing Investigator Raymond helped Plaintiff to obtain requested documents and witnesses, but told Plaintiff that he would not provide him with the policy directive on communicable diseases. Plaintiff believes that the policy shows that Defendant Hill did not have the authority to quarantine Plaintiff. Hearing Investigator Raymond told Plaintiff that he belonged in segregation for refusing TB testing and that there was no defense to the dangerous contraband misconduct written by Defendant Perala. Plaintiff claims that without Raymond's assistance, he could not obtain the necessary documents. Plaintiff alleges that at some point Defendant Hill wrote a Notice of Intent (NOI) to classify Plaintiff to administrative segregation for refusing "TB testing." Plaintiff asserts that he never spoke to Defendants Hill or Borgen about TB testing and that he has no symptoms of TB. Plaintiff contends that Defendants Hill and Borgen were not authorized to send Plaintiff to quarantine. Plaintiff also states that the real reason he is in segregation is for punishment, not for health reasons.

Also on December 20, 2017, Defendant Paacolon refused to give Plaintiff paper despite the fact that he was aware of Plaintiff's pending cases and filing deadlines. Defendant Paacolon also refused to give Plaintiff his store order, even though Plaintiff had already paid for it. Plaintiff wrote his pleadings on a grievance form, but when he asked Defendant Basgen for an envelope, Defendant Basgen said, "You can forget about any filings in a court after Rule is done with your shit. You will learn not to complain about Baraga Prison staff. The courts don't care." Plaintiff then asked Defendant Basgen for his store order and Defendant Basgen replied, "You're being taught a lesson not to file lawsuits and grievances, you're not getting store homeboy."

On December 22, 2017, Defendant Paacolon and Corrections Officer Lee gave Plaintiff five duffel bags full of his legal property. Plaintiff states that Defendant Rule had removed all the legal documents and caselaw from the folders and envelopes, so that all the papers were mixed up in the duffel bags. Plaintiff claims that all of his papers had previously been deemed allowable excess legal property. Plaintiff asserts that documents from numerous cases in the state and federal courts were destroyed, confiscated, or lost. Plaintiff has been unable to reassemble his papers, which relate to pending civil and criminal litigation, and insists that Defendant Rule's conduct has prevented him from proving his innocence.

Plaintiff claims that while in segregation at AMF, Defendant Cordanaro refused to give him writing paper and told Plaintiff to drop his civil suits

or he would be killed. When Plaintiff reported the threat, Defendant Basgen told Plaintiff that he did not believe convicts. When Plaintiff asked Defendant Basgen for writing paper, he replied that if Plaintiff "took the TB test [he] would not need writing paper or been charged with having a razor." Defendant Basgen then advised Plaintiff to drop the civil suit. Defendant Skytta came to Plaintiff's cell and said "Don't ask me for shit or you won't eat." Plaintiff was never given any writing paper despite the fact that Plaintiff told Defendants Cordanaro, Skytta, and Basgen about the deadlines for his pending cases. Defendant Skytta later warned Plaintiff by stating, "If you file any grievances, you're going to die old nigger."

Plaintiff alleges that he asked Defendant Bouchard to reschedule the December 19, 2017, legal writer meeting because of the impending deadline for filing a petition for writ of certiorari in the United States Supreme Court. Plaintiff states that the legal writer came to his unit on December 23, 25, 26, and 30 of 2017, but only met with Plaintiff on December 30, 2017. At that point, the deadline for filing the petition for writ of certiorari had expired.

On December 27, 2017, Defendants Skytta, Cordanaro, and Basgen denied Plaintiff's request for soap. On December 28, 2017, Defendants Skytta, Cordanaro, and Basgen denied Plaintiff's requests for soap and toothpaste, stating that the items were not allowed in segregation. Later that day, Defendant Holley told Plaintiff that because he had accused Corrections Officer Lachance of sexual assault, Defendant Holley was going to "fuck him up." Defendant Holley later lied and said that Plaintiff refused to attend his hearing. Plaintiff was found guilty and given 10 days loss of privileges. On December 28, 2017, Plaintiff had three hearings on the misconduct tickets and the notice of intent he received on December 19, 2017. Plaintiff was not present at the hearing on the disobeying a direct order misconduct because Defendant Holley lied and said that Plaintiff was refusing to attend. Plaintiff was not allowed to offer evidence at his hearings on the notice of intent and the dangerous contraband ticket. Plaintiff was found guilty at all three hearings.

On December 29, 2017, Plaintiff ordered indigent legal supplies. Defendants Skytta and Cordanaro again refused to give Plaintiff soap and toothpaste and warned him that if he complained they would assault him. Plaintiff asked to send out legal mail to a state court, but Defendants Skytta and Cordanaro refused and Defendant Skytta stated, "not gon happen nigger." Later that day, Defendants Skytta and Cordanaro refused to give Plaintiff toilet paper.

On January 2, 2018, Defendant Holley told Plaintiff, "See how easy it is for us to fuck you over, I told Lt. Linder that you refused to attend your DDO [disobeying a direct order] hearing and your dumb ass was found guilty. You filed lawsuits and your property got fucked up. Enjoy, you're staying in the hole motherfucker." On January 4, 2017, Plaintiff gave Defendant Basgen his Court of Appeals opinion in Case No. 17-1084, for submission to Defendant Bouchard. Plaintiff never got any response from either Basgen or Bouchard. Defendant Basgen attempted to force Plaintiff to take the wrong sized envelopes. Later, a mental health worker named Beaudoin came to Plaintiff's cell and Plaintiff gave him a kite stating that he was afraid for his life. The kite asserted that Plaintiff had been sexually assaulted by Defendant Holley on February 16, 2016, and sexually harassed on November 27, 2017, and December 29, 2017. Plaintiff asked Beaudoin to return the note to him with a health care stamp on it, so that Plaintiff could use it as evidence. Beaudoin agreed.

On January 5, 2017, Defendant Skytta denied his request for toothpaste, saying that all Plaintiff has done is file grievances. Later that day, Defendant Holley took Plaintiff to see Resident Unit Manager Jondreau for his PREA [Prison Rape Elimination Act] interview related to the December 29, 2017, sexual harassment by Defendant Holley. On the way, Defendant Holley warned Plaintiff to watch what he said to Resident Unit Manager Jondreau. After Plaintiff arrived at Jondreau's office, Jondreau had Defendant Holley leave and Defendant Skytta replace him. Plaintiff asked for Defendant Skytta to leave also, but Jondreau replied that Plaintiff did not run anything. Remembering the threats made by Defendants Cordanaro and Skytta, Plaintiff told Jondreau that he had nothing to say, but that he would send him a written statement. On the way back to his cell, Defendant Skytta told Plaintiff that he was not going to eat for a long time, then both he and Jondreau laughed.

Later that day, Defendant Skytta refused to give Plaintiff his lunch tray and on January 6, 2018, Defendant Skytta refused to give Plaintiff his breakfast tray. Defendant Holley subsequently told Plaintiff that he did not write misconduct tickets, but instead took food trays, shower, and yard. On January 8 and 9, 2018, Plaintiff asked Defendant Basgen for toothpaste and submitted a kite regarding the need for toothpaste, but as of January 12, 2018, he had not received toothpaste. Plaintiff was told that he could brush his teeth using water.

Plaintiff claims that his legal writer has refused to assist him in any case where Defendant Bouchard is a defendant because Defendant Bouchard runs the legal writer program. Plaintiff states that this prevents him from having meaningful access to the courts. Plaintiff states that he filed numerous grievances against the named Defendants and other prison officials in 2015, 2016, and 2017, asserting interference with Plaintiff's access to the courts, as well as other forms of misconduct. On January 19, 2018, Defendants Basgen and Skytta refused to give Plaintiff a toothbrush, although Defendant Skytta gave another similarly situated inmate a toothbrush on the same day. Defendant Skytta told Plaintiff that he was not going to give him his lunch, but Plaintiff received his lunch tray from Defendant Holley. Defendant Basgen later denied Plaintiff's request for carbon paper, business sized envelopes, and oversized legal envelopes that Plaintiff needed to submit documents to the courts.

On January 20, 2018, Defendant Skytta refused to give Plaintiff his breakfast tray. On January 22, 2018, Defendant Basgen again refused to give Plaintiff supplies for his legal mail. Plaintiff complains that he has no access to the Federal Rules of Civil Procedure, Rules of Evidence, and Rules of Appellate Procedure. On January 24, 2018, Plaintiff was moved to a detention cell without any reason being given. The cell was filthy and smelled of urine.  On January 25, 2018, Defendant Basgen asked Plaintiff, "How do you like your new home, let's see how much shit you can file now." Plaintiff ignored him. Defendant Basgen then slammed a stack of papers onto Plaintiff's hand. When Plaintiff verbalized pain, Defendant Basgen called him a retard and made faces at him.

On January 26, 2018, Plaintiff was told that he could not receive his store items because he was housed in segregation. However, the items ordered by Plaintiff were allowable for segregation prisoners.  Plaintiff states that other similarly situated inmates received their store items the previous month and that Defendant Basgen told him that he was being taught a lesson "not to file lawsuits and grievances." Plaintiff alleges that Defendant Basgen prevented Plaintiff from getting his complaint and affidavit notarized in this case, and delayed Plaintiff's access to his exhibits.

(*Id.*, PageID.624-631.)   The Court dismissed Defendants Kokko, Hill, and Borgen.

(*Id.*, PageID.637, ECF No. 13, PageID.638.)

### III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.  Access to the Courts

Jackson alleges that each Defendant violated his right to access the courts in various ways.  It is well established that prisoners have a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts.  *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.   In order to state a viable claim for interference with his

access to the courts, a plaintiff must show "actual injury."   *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.   In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.

"Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).   Moreover, the underlying action must have asserted a non-frivolous claim.   *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."   *Christopher v.*

*Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. The plaintiff must show that "a nonfrivolous legal claim ha[s] been frustrated or was being impeded." *Id.* at 415. And the complaint must "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a)" such that it pleads the "underlying cause of action and its lost remedy ... by allegations ... sufficient to give fair notice to the defendant." *Id.* at 416, 417–18.

To meet this requirement, a plaintiff must show (1) the loss of a nonfrivolous and arguable claim that is "more than a mere hope;" (2) the defendant's acts that caused the loss of the claim; and (3) "a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415–16; *see also Clark v. Johnston,* 413 F. App'x 804, 816 (6th Cir. 2011).

Jackson says that Defendant Bouchard failed to give him assistance from persons trained in the law on several occasions. (ECF No. 1, PageID.6.) In addition, Jackson says that Bouchard denied him access to the Federal Rules of Civil Procedure, Black's Law Dictionary, Webster's Dictionary, and the Michigan Bar Journal. (*Id.*) As a result, Jackson says he was unable to file a notice of appeal in the U.S. District Court in *Jackson v. Feliciano*, W.D. Mich. Case No. 2:17-cv-77, and a petition for writ of certiorari in the U.S. Supreme Court in *Jackson v. Bouchard*, 17-1084, or to state a claim for relief in this lawsuit. (*Id.*)

- 10 -

Jackson says that Defendants Cordanaro, Bastian, Skytta, and Paacolon refused to provide him with writing paper. (*Id.*, PageID.20-21, 28.) In addition, Jackson alleges that Defendants Bastian denied him correct-sized envelopes and notary services. (*Id.*, PageID.45, 82-83.) Further, Jackson alleges that Defendant Rule removed his legal documents from envelopes and mixed them up and on another occasion vandalized his legal property into a "confused mess." (*Id.*, PageID.29, 34, 37.)

In the opinion of the undersigned, Jackson has failed to show that he was denied access to the courts by establishing that Defendants took actions that hindered his ability to present a nonfrivolous direct appeal, habeas, or civil rights action. Jackson points to four cases where he alleges that Defendants denied him access to the courts. But a review of the materials before the Court indicate that Jackson has failed to explain how he suffered an actual injury as a result of Defendants' alleged actions.

**First**, Jackson says that he was denied access to the courts in this case. (ECF No. 1, PageID.6.) The complaint that Jackson filed in this case against multiple Defendants raises multiple claims for relief. His complaint exceeds 90 pages and has over 250 pages of exhibits. As outlined above, Jackson stated several claims for relief in his complaint and raised different theories of alleged misconduct by prison staff. Jackson has failed to explain how Defendants hindered his efforts to pursue a nonfrivolous legal claim in this case resulting in the loss of that nonfrivolous claim.

**Second**, Jackson says that he was unable to file a notice of appeal in the U.S. District Court in *Jackson v. Feliciano*, W.D. Mich. Case No. 2:17-cv-77, due to actions of a Defendant.   (ECF No. 1, PageID.9.)   Jackson has not shown that he lost a nonfrivolous claim as a result of some action by a Defendant here.

Some background on *Jackson v. Feliciano* is required here.   In *Jackson v. Feliciano*, the U.S. Magistrate Judge recommended that the defendants' motion for summary judgment be granted.   (W.D. Mich. Case No. 2:17-cv-77, ECF No. 69, PageID.1523.)   The Report and Recommendation (R&R) noted that a failure to file timely objections may constitute a waiver of any further right to appeal.   (*Id.*)   A brief review of the docket in *Jackson v. Feliciano* reveals that Jackson did not file objections to the R&R.[2]   The Court entered Judgement in favor of Defendants and dismissed that case on February 13, 2019.   (W.D. Mich. Case No. 2:17-cv-77, ECF No. 78.)   The Court noted that Jackson failed to file objections to the R&R despite receiving a thirty-day extension of time to file his objections.   (W.D. Mich. Case No. 2:17-cv-77, ECF Nos. 77 and 78.)   Thus, Jackson waived his right to appeal the district court's decision to the court of appeals.   *See Thomas v. Arn*, 474 U.S. 140, 155 (1985) (holding "that a court of appeals may adopt a rule conditioning appeal, when taken from a district court judgment that adopts a magistrate's

---

[2]      Jackson requested two extensions of the deadline to file objections to the R&R. (*See* W.D. Mich. Case No. 2:17-cv-77, ECF Nos. 70, 71, 74, 75.)   He asserted that he was unable to obtain assistance from the legal assistant due to that person's workload, and that he faced a delay in obtaining photocopies.   (W.D. Mich. Case No. 2:17-cv-77, ECF No. 71, PageID.1528; ECF No. 75, PageID.1538.)   The District Court granted Jackson's first request for an extension, but denied the second.   (W.D. Mich. Case No. 2:17-cv-77, ECF Nos. 73, 77.)

recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired").

The rule that a litigant must object to a U.S. Magistrate Judge's report and recommendation in order to file an appeal has long been upheld, even against *pro se* litigants. *See Peoples v. Hoover*, 377 F. App'x 461, 462 (6th Cir. 2010) (stating "[p]arties, we have long held, forfeit appellate review of arguments not raised as objections to a magistrate's report) (collecting cases).

There are exceptions to the rule in *Thomas v. Arn*. *See Carson v. Hudson*, 421 F. App'x 560, 564 (6th Cir. 2011) (setting forth exception to the rule in *Thomas*). Jackson has failed, however, to explain how his failure to object to the R&R did not constitute a complete waiver of his appellate rights. Instead, his response to Defendants' motion for summary judgment focuses on his claim that Bouchard prevented him from filing a notice of appeal. (ECF No. 68, PageID.1043-44.) But under the holding in *Thomas*, and as pointed out in the R&R, Jackson's failure to object to the R&R constituted a waiver of his right to appeal. Thus, again, Jackson has failed to explain how Defendants hindered his efforts to pursue a nonfrivolous legal claim resulting in the loss of that nonfrivolous claim.

**Third**, Jackson says that he was denied the opportunity to file a petition for writ of certiorari in the U.S. Supreme Court in *Jackson v. Bouchard*, 17-1084. (ECF No. 1, PageID.10.) Jackson fails to explain the facts in that case or his legal theory to support his request for certiorari. In addition, Jackson has failed to explain how Defendant Bouchard denied him the opportunity to file a petition for writ of certiorari

in that case.   Moreover, the record shows that Jackson did file a petition for writ of

certiorari in case no. 17-1084 on January 26, 2018:

**Supreme Court of the United States**
**Office of the Clerk**
**Washington, DC  20543-0001**

Scott S. Harris
Clerk of the Court
(202) 479-3011

April 3, 2018

```
FILED
Apr 06, 2018
DEBORAH S. HUNT, Clerk
```

Clerk
United States Court of Appeals for the Sixth Circuit
524 Potter Stewart Courthouse
100 East Fifth Street
Cincinnati, OH  45202

     Re:  Douglas Cornell Jackson
         v. Joseph Bouchard
         No. 17-8351
         (Your No. 17-1084)

Dear Clerk:

     The petition for a writ of certiorari in the above entitled case was filed on
January 26, 2018 and placed on the docket April 3, 2018 as No. 17-8351.

                        Sincerely,

                        **Scott S. Harris**, Clerk

                        by

                        Lisa Nesbitt
                        Case Analyst

(ECF No. 65-5, PageID.1033.)

    **Fourth**, Jackson alleges that he was denied access to the courts in *Jackson v.*

*MDOC*, 16-633-AA, where the Baraga County Circuit Court allegedly dismissed his

case for lack of progress.   (ECF No. 1, PageID.39.)   Jackson has not presented facts showing that this state law claim was a non-frivolous direct appeal, a petition for writ of habeas corpus, or a civil rights complaint.[3]

As a general matter, Jackson fails to show that the Defendants imped his ability to file a nonfrivolous direct appeal, habeas, or civil rights action.   But the undersigned wishes to comment briefly on some of Jackson's other claims relating to his access-to-the-courts claim.

Jackson says that he was denied writing paper and certain sized envelopes. (ECF No. 1, PageID.21, 45, 82.)   However, Jackson fails to explain how this caused him an actual injury in a specific case.   Jackson has shown that he had access to significant amounts of paper based upon his filings in this case.

In addition, Jackson alleges that Defendant Rule messed up or mixed up his legal writings during a cell search.   (*Id.*, PageID.29-39.)   Jackson has failed to explain how Defendant Rule denied him his right to access the courts in a specific case.

Jackson also asserts that he lacked the assistance of a legal writer at different times.   (*Id.*, PageID.6-10, 58-60.)   It should be noted that Jackson's own exhibits establish that the he had the assistance of a prison legal writer.   (ECF No. 1-3, PageID.145-148, 151, 155-156, 159-161, 164, 175, 181; ECF No. 1-4, PageID.189-190, 199, 203, 207, 211, 218, 221, 225-226, 231, 234; ECF No. 1-5, PageID.239, 240, 247,

---

[3]   Defendants' brief represents that this involved an administrative appeal based upon the coding "AA" on the docket number.   (ECF No. 65, PageID.1006.)

249, 252, 254, 259, 262, 267-268, 283; ECF No. 1-6, PageID.288, 290, 293, 301, 305, 322.)   Although at times Jackson complained about his ability to get along with his legal writer (ECF No. 1-3, PageID.167, 172; ECF No. 1-6, PageID.306-308), he continued to receive assistance from the program.

Jackson also received numerous legal materials upon request, which included case law, statutes, and rules from the prison law library.   (ECF No. 1-3, PageID.176-177, 180, 185, 187; ECF No. 1-4, PageID.196, 198, 200, 202, 212, 214, 233; ECF No. 1-6, PageID.325-333.)

In the opinion of the undersigned, Jackson has failed to establish that any Defendant took an action that denied him the ability to pursue a nonfrivolous direct appeal, a petition for writ of habeas corpus, or a civil rights action.

For these reasons, I respectfully recommend that the Court grant the motion dismissing Jackson's access-to-the-courts claims under the First and Fourteenth Amendments.

## V.   Eighth Amendment

Jackson says that Defendants took various actions that violated his Eighth Amendment rights.   The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.   Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."   *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).   The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."   *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346).   The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.   The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."   *Id*. at 348 (citation omitted).   Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."   *Ivey*, 832 F.2d at 954.   Temporary inconveniences, such as being subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted));   *Hartsfield v. Vidor,* 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment")

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims));

- 17 -

*see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Jackson's allegations that he was denied legal assistance, writing materials, and envelopes fails to implicate the cruel and unusual punishment clause of the Eighth Amendment. *Rhodes*, 452 U.S. at 347. Similarly, if Jackson is asserting that his receipt of misconduct tickets violated the Eighth Amendment, those claims fail because Jackson cannot establish that he was denied access to minimal life necessities as a result of his receipt of misconduct tickets. *Id.*

Jackson says that he was temporarily denied access to soap, toilet paper, toothpaste, and food. (ECF No. 1, PageID.42-43, 45-47, 50-54, 79-81.) However, the temporary denial of toilet paper, towels, bedding, hygiene material, and food fails to rise to an Eighth Amendment violation. *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes, and the like do not rise to the level of a constitutional violation); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation).

Jackson asserts that he was subjected to verbal harassment. (ECF No. 1.) Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v.*

*Wilson*, 832 F.2d 950, 955 (6th Cir.1987).   Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.   *Id.*   Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *Torres v. Oakland Cty.*, 758 F.2d 147, 152 (6th Cir. 1985).

In addition, Jackson's claims arising from emotional injuries are barred by 42 U.S.C. § 1997e(e).   *Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008). Section 1997e(e) precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury."   *Id.*

Jackson has alleged one instance of excessive force against Defendant Bastian. Jackson says that Defendant Bastian slammed a stack of papers on his hand and called him a derogatory name.   (ECF No. 1, PageID.84.)   As a result, Jackson stated at his deposition that he suffered some pain and bruising.   (ECF No. 66-3, PageID.1028.)   In his complaint, he alleged that he sought mental health care treatment due to this incident.   (ECF No. 1, PageID.84.) In the opinion of the undersigned, Jackson's allegation of excessive force fails to rise to the level of an Eighth Amendment claim and is not actionable under 42 U.S.C. § 1997e(e).

For these reasons, it is respectfully recommended that the Court grant Defendants motion to dismiss Jackson's Eighth Amendment claims.

## VI.  Defendant Paacolon

Defendant Paacolon was never served with a summons and complaint and never waived service.   (ECF No. 23.)   Defendant Paacolon has not been identified.

There "has been no staff employed with the last name of Paacolon" at Baraga Correctional Facility.   (ECF No. 23, PageID.656.)   Due to the failure to serve Defendant Paacolon with a summons and complaint, it is recommended that the Court dismiss Defendant Paacolon from this case.

## VI.   Injunctive Relief

Jackson requests that the Court issue an injunction and restraining order to stop interfering with his litigation, return confiscated property after reviewing video evidence, and to transfer him to a different prison.   (ECF No. 74.)   Jackson says that he has been transferred back and forth from Baraga Correctional Facility. Jackson says that this is evidence of retaliation for his litigation activities.   In addition, Jackson alleges that individuals who are not defendants have violated his rights by denying him prescriptions and legal copies.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies."   *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court.   *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).

In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public

interest by issuance of the injunction.   *Id.*   These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.   *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009.

Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.   *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).   The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.   *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Jackson's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action.   *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).   Jackson has not made such a showing. A review of the materials of record fails to establish a substantial likelihood of success with respect to Jackson's underlying claims.

Moreover, to extent that Jackson is seeking injunctive relief against individuals who are not Defendants in this case, the Court does not have jurisdiction

over nonparties to this action.  *Zenith Radio Corp., v. Hazeltine Research Inc.*, 395 U.S. 100 (1969).

A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages.  *Overstreet*, 305 F.3d at 578. Jackson has failed to assert factors that establish that he will suffer irreparable harm in the absence of an injunction.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here. For these reasons, it is respectfully recommended that the Court deny Jackson's motion for injunctive relief.

## VII.   Recommendation

I respectfully recommend that the Court GRANT Defendants' partial motion for summary judgment (ECF No. 65.) as follows:

1)   Dismiss Jackson's First and Fourteenth Amendment access-to-the-courts claims,

2)   Dismiss Jackson's Eighth Amendment claims, and

3)   Dismiss Defendant Paacolon.

In addition, it is recommended that the Court deny Jackson's motion for injunctive relief.   (ECF No. 74.)

If the Court accepts this recommendation, Jackson's First Amendment retaliation claims against Defendants Perala, Bastian, Cordanaro, Skytta, Rule, Bouchard, and Holly will be the only remaining claims in this case.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:   March 9, 2020                              /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U.S. MAGISTRATE JUDGE

- 23 -